United States Court of Appeals,

Eleventh Circuit.

No. 94-2157.

UNIVERSITY OF FLORIDA, Plaintiff-Appellant,

v.

KPB, INC., a Florida Corporation d/b/a "A" Notes, Kenneth Paul Brickman, Defendants-Appellees.

July 31, 1996.

Appeal from the United States District Court for the Northern District of Florida. (No. 90-10078-MMP), Maurice Mitchell Paul, Chief Judge.

Before HATCHETT and BARKETT, Circuit Judges, and GODBOLD, Senior Circuit Judge.

PER CURIAM:

The University of Florida ("U.F.") appeals from a judgment in favor of KPB, Inc., d/b/a A-Plus Notes ("A-Plus Notes") after a jury trial on U.F.'s claims of copyright infringement. A-Plus Notes produces commercial study guides for various courses taught at U.F. by hiring students attending U.F. to take lecture notes, which it in turn markets to the student body as a whole. U.F. contends that the district court erred in denying its motions for summary judgment and judgment as a matter of law as to its statutory and common law copyright infringement claims.[1] U.F. argues also that the court erred in directing verdicts in favor of A-Plus Notes on U.F.'s claims of false representation of origin and deceptive advertising pursuant to § 43(a) of the Lanham Act, 15

---

[1]U.F. claims statutory copyright infringement pursuant to 17 U.S.C. § 101 et seq., as well as common law copyright infringement, of written and oral components of its professors' lectures in fourteen courses taught during the 1990 spring semester, and one course taught in the 1989 fall semester.

U.S.C. 1125(a).[2]  U.F. alternatively argues that a new trial is required because the great weight of the evidence is against the jury's verdict as to the copyright claims and/or because the jury's verdict was tainted by counsel's misconduct during trial.

Motions for directed verdict and judgment notwithstanding the verdict are subject to *de novo* review.  Accordingly, we apply the same standard the district court must apply in determining whether to grant the motion.  *MacPherson v. University of Montevallo,* 922 F.2d 766, 770 (11th Cir.1991);  *Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989).  We review all of the evidence in the light most favorable to, and with all reasonable inferences drawn in favor of, the nonmoving party.  *MacPherson,* 922 F.2d at 770.  If the facts and inferences are so strong and overwhelmingly in favor of one party that the court believes that reasonable persons could not arrive at a contrary verdict, the grant of a directed verdict is proper.  *Verbraeken v. Westinghouse Electric Corp.,* 881 F.2d 1041, 1045 (11th Cir.1989) (quoting *Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir.1969)), *cert. denied,* 493 U.S. 1064, 110 S.Ct. 884, 107 L.Ed.2d 1012 (1990).  If, however, substantial evidence is presented opposed to the motion, and this evidence is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions, the motion must be denied.  *Verbraeken,* 881 F.2d at 1045.  Denial of a motion for a new trial is reviewed for clear abuse of

---

[2]At the outset, we find U.F.'s claim that A-Plus Notes intentionally interfered with U.F.'s relationship with the student notetakers to be without merit, and affirm the district court's grant of a directed verdict to A-Plus Notes on that issue.

discretion. *Hessen ex rel. Allstate Ins. Co. v. Jaguar Cars, Inc.,* 915 F.2d 641, 644-45 (11th Cir.1990).

At the outset, we note that on appeal from a final judgment after trial, the law of this circuit prohibits review of U.F.'s claim that the district court erred in denying its motion for summary judgment as to copyright infringement. *Wenzel v. Boyles Galvanizing Co.,* 920 F.2d 778, 782 (11th Cir.1991). As this court explained in *Stuckey v. Northern Propane Gas Co.,* 874 F.2d 1563, 1567 (11th Cir.1989) (quoting *Holley v. Northrop Worldwide Aircraft Serv., Inc.,* 835 F.2d 1375, 1378 (11th Cir.1988)), we do "not review the propriety of orders denying summary judgment motions based on the evidence available when the motion was made." The proper inquiry, rather, is directed to the sufficiency of the evidence as presented at trial, which the record reveals to be competent support for the jury's verdict for A-Plus Notes on the copyright claims.

U.F. also claims the district court erred in directing verdicts for A-Plus Notes on U.F.'s claims brought pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Section 43(a) of the Lanham Act creates a federal cause of action for unfair competition, but is limited to interstate commercial activities.[3]

---

[3]Our review of the record indicates that the Lanham Act claims were properly within the jurisdiction of the district court. U.F. made a showing that the marketing and sale of A-Plus Notes had an effect upon interstate commerce, *see Rickard v. Auto Publisher, Inc.,* 735 F.2d 450, 453 n. 1 (11th Cir.1984), and *JelliBeans, Inc. v. Skating Clubs of Ga., Inc.,* 716 F.2d 833, 838-39 (11th Cir.1983), by presenting evidence that approximately fifteen percent of its student body is from out-of-state, as well as introducing evidence of a U.F. professor's contract to develop commercial study guides with an out-of-state publisher.

*Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.,* 716 F.2d 833, 838 (11th Cir.1983).  The section forbids unfair trade practices involving infringement of trade dress, service marks, or trademarks, even in the absence of federal trademark registration.[4] *See Two Pesos,* 505 U.S. at 768, 112 S.Ct. at 2757; *Jellibeans,* 716 F.2d at 839; *AmBrit,* 812 F.2d at 1535.  Section 43(a) provides

> § 1125 False designations of origin and false descriptions forbidden
>
> (a)(1) Any person who, on or in connection with any goods or services, ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

---

[4]A "trademark" is defined in 15 U.S.C. § 1127 as including "any word, name, symbol, or device or any combination thereof" used by any person "to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source in unknown." *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768, 112 S.Ct. 2753, 2757, 120 L.Ed.2d 615 (1992).  A "service mark" is identical to a trademark in all respects except that it is intended to indicate the origin of services, rather than goods. *Restatement (Second) of Unfair Competition* § 9 cmt. f (1994).  "Trade dress" involves the "total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *AmBrit, Inc. v. Kraft, Inc.,* 812 F.2d 1531, 1535 (11th Cir.1986) (quoting *John H. Harland Co. v. Clarke Checks, Inc.,* 711 F.2d 966, 980 (11th Cir.1983)).

In support of its § 43(a) claims, U.F. has cited trademark, service mark, and trade dress cases, but has not clearly declared under which category its claims fall. Central to U.F.'s Lanham claims is its course numbering system, for which we assume U.F. is claiming § 43(a) protection as an unregistered service mark.  Regardless of the terminology used, the same substantive legal principles apply equally to all three categories of marks.

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

This court held in *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1535 (11th Cir.1986), that in order to establish liability under § 43(a), the plaintiff must prove three elements: (1) its mark is inherently distinctive or has acquired secondary meaning,[5] (2) its mark is primarily non-functional,[6] and (3) the defendant's

---

[5] Whether the plaintiff's trade dress is inherently distinctive depends upon an examination of whether "it [is] a "common" basic shape or design, whether it [is] unique or unusual in a particular field, [and] whether it [is] a mere refinement of a commonly adopted and well-known form of ornamentation for a particular class of goods viewed by the public as a dress or ornamentation for the goods...." *Id.* at 1536 (quoting *Brooks Shoe Manufacturing Co. v. Suave Shoe Corporation,* 716 F.2d 854, 858 (11th Cir.1983)). If the plaintiff's trade dress is not sufficiently distinctive to allow consumers to identify the product from the trade dress, then the dress does not inherently serve as an indication of origin and the plaintiff can claim no right to the exclusive use of the trade dress. *AmBrit,* 812 F.2d at 1536.

Alternatively, a finding of "secondary meaning"—the connection in the consumer's mind between the mark and the product's producer, whether that producer is known or unknown—establishes protectability notwithstanding the indistinctiveness of the trade dress. *Id.* "Trademarks and trade dress may be classified as generic, descriptive, suggestive, or arbitrary. Once conceived as distinct categories, these rubrics are now commonly viewed as "central tones in a spectrum,' " with distinctiveness increasing as it moves toward the suggestive or arbitrary end of the spectrum. *Id.* at 1537.

[6] A [mark] is "functional" if it affords benefits in the manufacturing, marketing, or use of the goods or services with which [it] is used, apart from any benefits attributable to the [mark's] significance as an indication of source, that are important to effective competition by others and that are not

mark is confusingly similar.[7]

U.F. claims A-Plus Notes engaged in misrepresentation of origin and deceptive advertising during the marketing of its study guides in violation of § 43(a) of the Lanham Act, and that the district court erred in directing verdicts for A-Plus Notes on those claims. In order to advance its Lanham Act claims to the jury, U.F. was required to present substantial evidence as to all three elements: (1) distinctiveness, (2) nonfunctionality, and (3) confusing similarity. The district court noted that U.F. conceded before trial that the information it sought to protect—numbers, places, and times of course meetings, etc.—is functional and otherwise nondistinctive.

U.F. focused its appeal on the third element—that the court applied the wrong test in assessing its unfair competition claims by relying upon the absence of actual confusion, instead of determining whether there existed a *likelihood of confusion,* as to U.F.'s sponsorship or approval of the A-Plus study guides.[8] Even

---

> practically available through the use of alternative designs.

*Restatement (Third) of Unfair Competition* § 17 (1994).

[7]"[T]he touchstone test for a violation of § 43(a) is the "likelihood of confusion' resulting from the defendant's adoption of a trade dress similar to the plaintiff's." *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.,* 684 F.2d 821, 831-32 (11th Cir.1982). A variety of factors are relevant in determining whether there is a likelihood of confusion including the strength of the trade dress, similarity of design, similarity of the products, identity of retail outlets and purchasers, similarity of advertising media, the defendant's intent and actual confusion. *AmBrit,* 812 F.2d at 1538.

[8]The court supported its ruling by stating merely that:

> Well, there is no confusion here. There is no false

if that aspect of U.F.'s argument has merit, this court has held that in addition to likelihood of confusion, liability under the § 43(a) specifically requires a showing of *nonfunctionality* and *distinctiveness* of the plaintiff's mark, which U.F. has conceded it cannot do. *Bauer Lamp Co., Inc. v. Shaffer,* 941 F.2d 1165, 1170 (11th Cir.1991); *AmBrit,* 812 F.2d at 1535.

U.F. attempts to circumvent this court's requirement of a showing all three Lanham elements by relying upon the former Fifth Circuit's decision in *B.H. Bunn Co. v. AAA Replacement Parts Co.,* 451 F.2d 1254 (5th Cir.1971), for the proposition that A-Plus Notes' actions as a whole created confusion as to the original source of the study guides. The "sum of the digits" test in *B.H. Bunn Co.* was used, however, to assess unfair competition claims brought pursuant to Florida state law, not the Lanham Act.[9] *Id.* at 1262, 1263. We have found no authority to the effect that a "sum of the digits" test will allow this court to disregard the absence of two of the three elements required under the Lanham Act for an unfair competition claim.

---

> advertising, there is nothing. You ought to try this thing on what the main theme is and, that is, is there a copyright here and did the defendant violate the copyright? All of this other junk—and it is junk—shouldn't even be here. It ought to be gone. And you shouldn't be—whether the university is mad at anyone, it doesn't make a hill of beans.

[9]We further note that the course numbering system utilized by U.F. was not a "personalized, ... unusual, numbering system, ... on which customers might rely for the reputation and quality of the product" as that found protectible in *B.H. Bunn.* 451 F.2d at 1263. A general system of course numbers, locations, and times has nothing to do with the quality of a product, but is common to any educational institution. Mere reference to U.F.'s course numbering system by A-Plus Notes on its corresponding study guides was within its competitive rights.

Without "substantial evidence" that the information U.F. sought to protect was both distinctive and nonfunctional, elements necessary to prevail under § 43(a) of the Lanham Act, directed verdicts were appropriately granted in favor of A-Plus Notes.  We accordingly affirm.

AFFIRMED.