Stacey **BLAKE, and others similarly situated, Plaintiff,**

v.

**James BATMASIAN, an individual d/b/a Investments Limited, and individually, and Marta Batmasian, an individual d/b/a Investments Limited and individually, and LSA Management Inc., a Florida corporation, Defendants.**

**CASE NO. 15-81222-CIV-MARRA/MATTHEWMAN**

United States District Court, S.D. Florida.

Signed June 10, 2016

Entered 06/13/2016

Chelsea A. Lewis, Chris Kleppin, Glasser & Kleppin, P.A., Plantation, FL, for Plaintiff.

Bridget Ann Berry, Greenberg Traurig, West Palm Beach, FL, Heather Elise Kruzyk, George Louis Sigalos, Simon, Sigalos, LLP, Jennifer Boussy Carroll, Simon Sigalos & Spyredes PA, Boca Raton, FL, for Defendants.

## ORDER ON MOTION TO DISMISS

KENNETH A. MARRA, United States District Judge

**THIS CAUSE** is before the Court upon Defendants' Motion to Dismiss Plaintiffs' Corrected Second Amended Complaint and/or Motion for More Definite Statement [DE 52]. The Motion is fully briefed and ripe for review. The Court has carefully considered all relevant filings and is otherwise fully advised in the premises.

### Introduction

This action arises from a claim for recovery of overtime compensation under the Fair Labor Standards Act ("FLSA"). Defendants James and Marta Batmasian, doing business as Investments Limited, are in the business of leasing commercial and residential properties. Defendants' Motion to Dismiss, DE 52 at 13. Accepting the allegations of the Complaint as true for purposes of resolving this motion, Plaintiff, Stacey Blake ("Blake"), worked for Defendants as a commercial leasing agent and assistant property manager in Boca Raton, Florida; he regularly worked more than 40 hours per workweek for which he was not compensated; and Defendants instituted a policy throughout their business not to pay overtime by either misclassifying employees as independent contractors or simply refusing to pay overtime. It is also alleged that, in lieu of some of the overtime hours that were worked, Defendants provided vouchers from Defendants' tenants who were late on their rental payments to Blake and other employees. One spa tenant provided vouchers for one hour massages. Compl. ¶ 20.

Defendants argue that the Corrected Second Amended Complaint ("Complaint") (DE 28) is legally insufficient and fails to state a cause of action because:

1. Plaintiff does not specify any time period or approximate number of hours worked during a given period whereby overtime is allegedly owed, and/or amounts allegedly due;

2. Plaintiff fails to sufficiently allege facts which support that the alleged employment is covered under the FLSA because Blake does not allege that in discharging his duties, he was engaged in interstate commerce;

3. Blake fails to allege sufficient facts which identify or establish that the unspecified plaintiffs who are allegedly similarly situated are in fact similarly situated;

4. Plaintiff fails to allege sufficient facts that any or all Defendants were employers for purposes of the FLSA; and finally

5. Any cause of action by opt-in Plaintiff Sotomayor must be dismissed for inappropriate claim-splitting and duplicate litigation.

## Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted.

*Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

## Discussion

### 1. Specifying time period or approximate number of overtime hours worked

Defendants argue that because Plaintiff does not specify any time period or approximate number of hours worked during a given time period whereby overtime is allegedly owed, Plaintiff has failed to state a cause of action for overtime, or must provide a more definite statement. This argument is rejected.

■ This Court has addressed this precise argument in *Anish v. Nat'l Sec. Corp.*, 10–80330–CIV–MARRA, 2010 WL 4065433, at *2 (S.D.Fla.2010) and stated,

[u]nlike the complex antitrust scheme at issue in *Twombly* that required allegations of an agreement suggesting conspiracy, the requirements to state a claim of a FLSA violation are quite straightforward. *Secretary of Labor v. Labbe*, 319 Fed.Appx. 761, 763 (11th Cir. 2008). The elements that must be shown are simply a failure to pay overtime compensation and/or minimum wages to covered employees and/or failure to keep payroll records in accordance with the Act. *Id.; see also Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1277 n.68 (11th Cir.2008) (explaining that to establish a *prima facie* FLSA case, an employee must demonstrate (1) an employment relationship, (2) that the employer engaged in interstate commerce, and (3) that the employee worked over forty hours per week but was not paid overtime wages); *Powell v. Morton Plant Mease Health Care, Inc.*, 174 Fed. Appx. 520, 521 (11th Cir.2006) (same).

Here, Plaintiff has alleged that he was an employee covered by the FLSA who worked for Defendant, that Defendant failed to pay him time-and-a-half wages

for his overtime hours, that Defendant failed to pay him minimum wages, and that Defendant was an enterprise engaged in interstate commerce. These allegations are sufficient to give Defendant "fair notice of what the ... claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955, and thus are sufficiently pled. In so holding, *the Court rejects Defendant's argument that Plaintiff must specify the time period or approximate number of hours worked during a given period to state an FLSA claim*. The Complaint alleges that Plaintiff worked more than forty hours per week and was not compensated overtime pay or minimum wages. A "claim for relief for failure to pay minimum wages [or] to provide overtime compensation ... under FLSA does not require more." *Labbe*, 319 Fed. Appx. at 764. *To the extent that Defendants seek Plaintiff's and potential collective-action members' approximate hours worked during a given time period whereby overtime is allegedly owed, discovery can provide Defendants with such data and the lack of this information is not grounds for dismissal at this stage.* *Anish v. Nat'l Sec. Corp.*, 10–80330–CIV– MARRA, 2010 WL 4065433, at *2 (S.D.Fla.2010) (emphasis provided). Consistent with this Court's prior ruling on this matter, the motion to dismiss based on this first argument is denied.

## 2. Interstate Commerce

█ Defendants argue that Blake fails to make sufficient allegations that the employer or employee engaged in interstate commerce, as required to state a claim under the FLSA. For Blake to allege coverage under the FLSA properly, he *must either* establish the enterprise's *or* the individual's engagement in interstate commerce. *Mayo v. Jean Nicole Hair Salons, Inc.*, 2:15–CV–115–FTM, 2015 WL

4751202, at *2 (M.D.Fla.2015) citing *Rushton v. Eye Consultants of Bonita Springs*, No. 2:10–cv–357–FTM– 29SPC, 2011 WL 2601245, at *1 (M.D.Fla. June 30, 2011).

█ Under the FLSA, enterprise coverage only applies to an employer if it has "(1) employees engaged in [interstate] commerce or handling goods moved in [interstate] commerce, and (2) annual gross volume of sales or business done of at least $500,000." *Jones v. Freedom Rain, TLC*, 401 Fed.Appx. 409, 411 (11th Cir.2010); *see* 29 U.S.C. §§ 203(b), 203(s)(1)(A), 207(a)(1), *Fresh v. Diamond Dev. & Investments Inc.*, 13–CV–2657–WSD, 2016 WL 2745836, at *5 (N.D.Ga.2016), *Dobbins v. Scriptfleet, Inc.*, 11–cv–1923–T–24, 2012 WL 601145, at *2 (M.D.Fla. Feb. 23, 2012) (finding plaintiff's FLSA claim adequately pled where plaintiff alleged that (i) defendant was "engaged in interstate commerce or in the production of goods for commerce," and (ii) "the annual gross sales volume of [defendant] was in excess of $500,000.00 per annum").

In the instant case, Blake alleges:

[T]he Batmasians have a whole accounting team of employees (*e.g.*, James Baker, Paul Bedoyan) who during material times engaged in obtaining financing from outside the state of Florida, such as from Brookline Bank, John Hancock, Wells Fargo, and other such institutions, and James and Marta Batmasian (themselves employees) were involved in obtaining the financing, too. In order to obtain the financing, the employees made long distance phone calls and sent emails to individuals who reside out of the state of Florida regularly and recurrently... [T]he contacts outside the state of Florida by the employees involved in obtaining financing were regular and recurrent, during all material times, and a significant portion of the real estate holdings of the Batmasians

are located in Massachusetts, which are financed and dealt with by their employees in Florida.

Compl. ¶ 8. Blake further alleges that

The Batmasians have gross revenue which exceeds $500,000 for each of the past three years, and as of December 31, 2010 claimed to have total assets $1,676,635,926.... [They] deposit millions of dollars per year into LSA Management, Inc. to pay their many employees, and thus the gross revenue of LSA Management, Inc. greatly exceeds $500,000 annually, at least for years 2010-15.

Compl. ¶¶ 8, 7.

The allegations that Defendants' employees regularly and recurrently made long distance phone calls and sent emails to individuals who reside out of the state of Florida in order to obtain financing for the business, as well as the allegation that a significant portion of the Batmasians' real estate holdings are located in Massachusetts, which are financed and dealt with by their employees in Florida, satisfies the requirement that the enterprise be engaged in interstate commerce so as to be subject to the overtime and record-keeping provisions of the FLSA. As Plaintiff need only adequately allege that *either* the enterprise *or* the individual engaged in interstate commerce, the Court need not analyze Blake's individual allegation, that "he regularly and recurrently made calls to tenants and prospective tenants across state lines (who either resided for part of the year outside the state of Florida or who were looking for property or space in Florida)..." Compl. ¶ 8.

## 3. Similarly Situated

In two different sections, Defendants assert that Blake has failed to allege sufficient facts that show that there are employees who are similarly situated. Defendants complain that Blake does not specify what jobs, pay or tasks other "similarly situated" employees had, received or performed.

The Court rejects Defendants' argument that Plaintiff's collective-action allegations are conclusory and fail to establish that Plaintiff is similarly situated to other members of the proposed class. Such argument is premature at this stage. The Court only discovered Plaintiff's motion to conditionally certify a collective action two weeks ago. It is in ruling on that motion that the Court will carefully consider whether Plaintiff has adequately alleged that similarly situated employees were denied overtime compensation.

## 4. Employers for purposes of the FLSA

■ To state a cause of action under the FLSA, an employee must first allege an employment relationship. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1277 n.68 (11th Cir.2008). Defendants argue that the allegations surrounding the employment relationship between Plaintiff and each Defendant are insufficient to allege coverage under the FLSA, and that if Blake is attempting to allege that both the Batmasians and LSA Management, Inc. ("LSA Management") employed him, he fails to properly allege a "joint-employment" relationship.

■ The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." *See* 29 U.S.C. § 203(d). Additionally, the Eleventh Circuit has held that a "corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA" as long as that corporate officer is "involved in the day-to-day operation or ha[s] some direct responsibility for the supervision of the employee." *Alvarez Perez v. Sanford–Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir.2008)

(internal quotation marks omitted). In deciding whether a party is an employer, "economic reality"[1] controls rather than common law concepts of agency. *Goldberg v. Whitaker House Cooperative*, 366 U.S. 28, 33, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961); *Brouwer v. Metro. Dade Cnty.*, 139 F.3d 817, 819 (11th Cir.1998); *Villarreal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997); *Reilly v. Madison Ave. Media, Inc.*, 12–80558–CIV, 2012 WL 4838993, at *2 (S.D.Fla.2012). Furthermore, an employee may be jointly employed by several employers,[2] who are all responsible for compliance with the FLSA. *See Layton v. DHL Exp. (USA), Inc.*, 686 F.3d 1172, 1175 (11th Cir.2012) (citing 29 C.F.R. § 791.2(a)). In *Villarreal v. Woodham*, the Eleventh Circuit held that the economic reality test includes inquiries into "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Villarreal*, 113 F.3d at 205 (quoting *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir.1983)).

Blake has clearly alleged an employer, employee relationship with the Batmasians. He has alleged that he worked for their commercial and residential property leasing business for about three years and was required to work overtime regularly but was never compensated for it. Blake alleges it was Mr. Batmasian's decision never to pay overtime even when it was worked, and occasionally offered vouchers for services from his tenants instead. Compl. ¶ 15. It is further alleged that James and Marta Batmasian share day-to-day operational control over the business (Investments Limited) and that "the Batmasians have the power to hire and fire and exercise it regularly." Compl. ¶¶ 6, 9. These alleged facts sufficiently allege operational control, which brings the Batmasians under the FLSA definition of employer. *Ceant v. Aventura Limousine & Transp. Serv., Inc.*, 874 F.Supp.2d 1373, 1381 (S.D. Fla. 2012) (quoting *Baltzley v. Berkley Group, Inc.*, 10–61194–CIV, 2010 WL 3505104, at *3 (S.D.Fla.2010)).

As far as LSA Management, Investments Limited's payroll company, Blake alleges he

---

1. The economic reality test to determine whether individual is employee within the protection of FLSA applies not only at summary judgment stage of proceedings, but also on a motion to dismiss for failure to state claim on which relief may be granted. *Freeman v. Key Largo Volunteer Fire & Rescue Dept., Inc.*, 494 Fed.Appx. 940, 943 (11th Cir. 2012).

2. A joint-employment relationship exists, among other ways, when "the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer." 29 C.F.R. § 791.2(b)(1)–(3). In addition, the Eleventh Circuit has articulated eight factors a court should consider in determining whether a joint-employment relationship exists: (1) the nature and degree of the putative employer's control of the workers; (2) the degree of supervision, direct or indirect, of the work; (3) the right, directly or indirectly, to hire, fire, or modify the workers' employment conditions; (4) the power to determine the workers' pay rates or methods of payment; (5) the preparation of payroll and payment of workers' wages; (6) the ownership of the facilities where the work occurred; (7) whether the worker performed a line job integral to the end product; and (8) the relative investment in equipment and facilities. *Layton v. DHL Exp. (USA), Inc.*, 686 F.3d 1172, 1176 (11th Cir.2012). Whether a joint-employment relationship exists is a fact-specific inquiry and must be determined on a case-by-case basis.

was "employed" by LSA Management, Inc. for purposes of the FLSA, as that entity provided him with his paychecks and thus was a single and/or joint employer; Plaintiffs performed services that benefitted the payroll company, because James and Marta Batmasian deposited money into the payroll company to pay Plaintiffs.

Compl. ¶ 5. Plaintiff further cites to paragraph 17 where it is alleged,

The Plaintiffs were all given tasks that were designed to facilitate the real estate business of the Defendant, such as leasing agents, paralegals, assistant property managers, and related employees.

Compl. ¶ 17. Blake maintains that these factual allegations adequately assert that LSA Management was under the common control of the Batmasians and that Plaintiffs' work simultaneously benefitted all Defendants.

The Court does not agree. The fact that LSA Management pays the Batmasians' employees is inadequate to plausibly allege that it is their employer. The only other fact alleged, that the Batmasians fund LSA Management in order to pay their employees' salaries, does not plausibly state that Blake performed services that benefitted LSA Management. Blake has not adequately alleged that he was "employed" by LSA Management, Inc. for purposes of the FLSA. Accordingly, LSA

Management, Inc. is dismissed, without prejudice. Leave to amend is granted for Plaintiff to allege, if he plausibly can, what services Plaintiff provided to the payroll company, and what economic reality factors demonstrate that LSA Management should be considered a joint employer. *See* 29 C.F.R. § 791.2;[3] *Mullins v. Posh Potties, LLC*, 13–80834–CIV, 2013 WL 5728105, at *2 (S.D.Fla.2013); *Hernandez v. Art Deco Supermarket*, 13–20705–CIV, 2013 WL 5532828, at *4 (S.D.Fla.2013) (by alleging that both defendants performed related activities that was performed through a unified operation and/or control for a common business purpose, Plaintiff had sufficiently plead that the corporate defendants were a joint employer and an enterprise under the FLSA).

### 5. Opt-in Plaintiff Sotomayor

The Complaint alleges that opt-in plaintiff Karla Sotomayor ("Sotomayor") was a leasing agent during the time period of 2012–June 2014, when she was terminated by the Defendants, shortly after Sotomayor filed a lawsuit against Defendants for sexual harassment and related causes of action. Compl. ¶ 23. Defendants argue that Sotomayor must be dismissed for inappropriate claim-splitting and duplicate litigation. Blake responds that (1) claim-splitting is an affirmative defense and Plaintiffs are not required to negate an affirmative defense in their complaint; (2) Defendants'

---

**3.** "[I]f the facts establish that the employee is employed jointly by two or more employers, *i.e.*, that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the Act. In this event, all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the act, including the overtime provisions, with respect to the entire employment for the particular workweek." 29 C.F.R. § 791.2(a).

"Where the employee performs work which simultaneously benefits two or more employers ... a joint employment relationship generally will be considered to exist in situations such as:

\* \* \* \* \*

Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer." 29 C.F.R. § 791.2(b)(3).

allegations of claim-splitting are not apparent from the face of the Complaint so this argument must be rejected; and (3) Sotomayor's state court complaint was for sexual harassment, retaliation, and intentional infliction of emotional distress and there were no claims for wages or overtime payments.

As Defendants are well aware, at this motion to dismiss stage, the Court must limit its review to that of the Complaint and the documents attached to it. The Court is without the tools to make a determination on this issue. Moreover, the Court has not yet ruled on the motion to conditionally certify a class, rendering the motion to dismiss a potential opt-in premature.

Therefore, in accordance with the conclusions and rulings made herein, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss Plaintiffs' Corrected Second Amended Complaint and/or Motion for More Definite Statement [DE 52] is granted in part and denied in part. It is denied in all respects except that LSA Management, Inc. is dismissed without prejudice. Plaintiff shall file his Third Amended Complaint on or before July 1, 2016.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 10th day of June, 2016.