FILED
United States Court of Appeals
Tenth Circuit

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**January 8, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

MARTY WAYNE RHODES,

    Plaintiff - Appellant,

v.

DANIEL SHANNON, Wyoming
Department of Corrections Director;
EDDIE WILSON, Wyoming Department
of Corrections Prison Administrator;
SETH NORRIS, Wyoming Department of
Corrections State Penitentiary Deputy
Warden; JANELLE THAYER, Wyoming
Department of Corrections State
Penitentiary Housing Manager,

    Defendants - Appellees.

No. 23-8026
(D.C. No. 1:22-CV-00239-SWS)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **HOLMES**, Chief Judge, **HARTZ**, and **MORITZ**, Circuit Judges.

_____

Marty Wayne Rhodes, an inmate in the Wyoming Department of Corrections

(WDOC), appeals the district court's order dismissing his 42 U.S.C. § 1983 civil

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

rights action against the above-named WDOC and Wyoming State Penitentiary (WSP) employees. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

The following facts are taken from Rhodes's original and amended complaints and the supporting documents he submitted to the district court.

Rhodes alleged that he was the victim of two assaults that violated the Prison Rape Elimination Act (PREA), 34 U.S.C. § 30301 *et seq*. First, in January 2020, a prison employee took away his clothing during a search as part of a urinalysis. The employee committed voyeurism after Rhodes provided the sample and did not return his clothing until about fifteen minutes later. Rhodes reported the incident to prison officials. WSP staff investigated the matter and found the allegations were unsubstantiated. Rhodes believed it was improper for staff to "investigate one of their own," R. at 353, so he filed a grievance. He also filed a report with the PREA hotline. The grievance was denied. Rhodes did not appeal the denial because the prison was on lockdown from March 2020 to mid-2022 due to Covid-19, but he started making reports and filing grievances about this incident again in 2022.

The second assault occurred in July 2022, when Rhodes was in administrative segregation. Another inmate grabbed his breasts and made a rude comment. Rhodes reported the incident. After an investigation, WSP staff told Rhodes his complaint was substantiated and that the other inmate would be charged administratively. The other inmate was then placed in a different pod than Rhodes.

Rhodes filed numerous complaints and grievances regarding these and other issues, including his housing placement, access to treatment programs, and how prison staff handled his complaints. Staff provided explanations for denying his requests for housing transfers and placement in treatment programs, including that he was ineligible because of his disciplinary history. In August 2022, he filed a grievance alleging that after he filed the PREA complaint and grievances, prison officials retaliated against him by denying housing requests, filing baseless disciplinary charges, denying grievances, denying requests for protective custody, and taking away previously awarded good time credits. He asked prison officials to stop retaliating against him, place him in appropriate programming, restore his good time, and transfer him to an Adult Community Corrections facility in preparation for his release into the community in the future. The grievance was denied, as were his administrative appeals.

Rhodes then filed the underlying lawsuit. He raised two claims against all defendants in both their individual and official capacities. His first claim alleged that defendants violated his rights under the PREA. The second claim alleged that they retaliated against him for exercising his First Amendment right to file reports and grievances.

Performing its 28 U.S.C. § 1915A(a) screening function, the district court dismissed Rhodes's claim under the PREA against all defendants for failure to state a claim, *see* §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), explaining that the statute does not create a private cause of action for prisoners to sue correctional staff for alleged

3

sexual misconduct or other alleged PREA violations. The court dismissed the retaliation claim against all defendants in their official capacities on sovereign immunity grounds, and it dismissed the individual-capacity claims against two defendants who are not parties to this appeal because the complaint did not identify any personal actions by them as part of the retaliation claim. Finally, the court noted Rhodes's request for relief in the form of treatment for chronic medical issues he claimed to suffer from and his related reference to the Eighth Amendment did not include sufficient factual allegations either to state a claim for violations of his Eighth Amendment rights or to support a request for medical care as relief for defendants' alleged retaliation. Rhodes filed a motion for reconsideration which was denied.

Rhodes then filed an amended complaint asserting a First Amendment retaliation claim against the remaining four defendants—Shannon, Wilson, Norris, and Thayer—in their individual capacities. Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Rhodes did not plausibly allege a First Amendment retaliation claim. Specifically, they argued that he pleaded no facts establishing that their actions were substantially motivated by his constitutionally protected conduct of filing PREA complaints and grievances, and that his own exhibits established non-retaliatory reasons for their actions. Defendants also sought dismissal of the requests for injunctive relief on the ground that they involve parties and claims outside the court's jurisdiction. The district

court granted the motion on both grounds and dismissed the amended complaint. This appeal followed.

## II. Standard of Review

Because Rhodes represents himself, "we construe his pleadings liberally." *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003). In so doing, we make some allowances for deficiencies, such as unfamiliarity with pleading requirements, failure to cite appropriate legal authority, and confusion of legal theories. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). But we "cannot take on the responsibility of serving as [his] attorney in constructing arguments and searching the record." *Id*.

We review de novo the dismissal of a § 1983 complaint for failure to state a claim under Rule 12(b)(6). *Gee v. Pacheco*, 627 F.3d 1178, 1183 (10th Cir. 2010). To survive the defendants' motion to dismiss, Rhodes was required to allege facts sufficient "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Under this standard, we accept all well-pled factual allegations as true and view them in the light most favorable to Rhodes. *Acosta v. Jani-King of Okla., Inc.*, 905 F.3d 1156, 1158 (10th Cir. 2018) (internal quotation marks omitted). But "the tenet that a court must accept" well-pled factual allegations as true "is inapplicable to legal conclusions," so we are not bound by Rhodes's recital of legal principles supported by conclusory statements. *Iqbal*, 556 U.S. at 678. In evaluating whether Rhodes's factual allegations met the plausibility standard, we consider both his complaint and the

documents he filed with his complaint. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *see* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

### III. <u>Discussion</u>

Rhodes appeals the order dismissing his retaliation claim against defendants Shannon, Wilson, Norris, and Thayer. He mentions the district court's order dismissing his other claims on screening, but he does not challenge the dismissal of his PREA claim, official-capacity claim, and retaliation claim against the other two defendants named in the original complaints. He also does not challenge the district court's conclusions that his request for medical treatment did not state an Eighth Amendment claim and that the court lacked jurisdiction to grant some of his requests for injunctive relief. He has thus waived any challenge he might have had to those rulings. *See Tran v. Trs. of State Colls. in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004) ("Issues not raised in the opening brief are deemed abandoned or waived." (internal quotation marks omitted)). As a result, we limit our analysis to the Rule 12(b)(6) dismissal of the retaliation claim against defendants Shannon, Wilson, Norris, and Thayer.

"Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of [a constitutional right]." *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990). "The filing of prison grievances is constitutionally protected activity." *Requena v. Roberts*, 893 F.3d 1195, 1211 (10th Cir. 2018). Thus, prison

officials may not retaliate against inmates for filing administrative grievances. *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991).

To state a First Amendment retaliation claim, Rhodes had to allege that (1) he "was engaged in constitutionally protected activity"; (2) the defendants' actions caused him "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) "the defendants' adverse action was substantially motivated as a response to [his] exercise of constitutionally protected conduct." *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007). "A plaintiff's subjective beliefs about why the government took action, without facts to back up those beliefs, are not sufficient" to establish retaliatory motive. *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1165 (10th Cir. 2009). Thus to satisfy the third prong of this test, Rhodes had to allege "*specific facts*" showing that "but for the retaliatory motive, the incidents to which he refers . . . would not have taken place." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (internal quotation marks omitted). His complaint had to "be factual and not conclusory" because "[m]ere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois,* 922 F.2d 560, 562 n.1 (10th Cir. 1990).

Applying these standards, the district court held that Rhodes "failed to allege specific facts showing retaliation." R. at 442. It described his allegations as "conclusory" and a "formulaic recitation of a retaliation claim," *id.* at 443, explaining that he pleaded no facts supporting either the conclusion that defendants "acted out of an intent to retaliate against [him] for earlier grievances," *id.*, or a "plausible

inference of retaliatory motive," *id.* at 444.  And the court observed that Rhodes "received alternative, non-retaliatory explanations for not receiving his desired programming, housing, or institution preferences when requested."  *Id.* at 446.  The court recognized that Rhodes had "lodged complaints and grievances since 2020," and that the challenged actions occurred in the same time frame.  But it held that the "'temporal proximity between the protected speech and the alleged retaliatory conduct, without more, does not allow for an inference of a retaliatory motive.'"  *Id.* at 445 (alteration omitted) (citing *Trant v. Oklahoma*, 754 F.3d 1158, 1170 (10th Cir. 2014).  Finally, the court acknowledged Rhodes's references to materials identifying various actions as examples of PREA-related retaliation, but explained that those references "do not eliminate the requirement that [he] must plead specific facts demonstrating a causal connection between [his] constitutionally protected conduct and the retaliatory actions themselves."  *Id.* at 448.

In his brief, Rhodes provides a factual narrative regarding the alleged PREA violations, the prison's handling of his PREA complaints, the denials of his requests for housing transfers and placement in treatment programs, and the denial of his grievances.  He also refers to the same materials he cited in his complaint, which provide examples of potentially retaliatory conduct.  He then quotes excerpts from caselaw on a variety of topics without explaining how those authorities apply to his case.  But his brief does not explain the district court's reason for dismissal—that he failed to allege specific facts showing that defendants acted with the intent to retaliate against him—was wrong.  He insists his factual allegations and supporting

documents "were 100% proof" that defendants retaliated against him, Aplt. Opening Br. at 9, but he points to no specific allegations in the amended complaint and nothing in the supporting documents establishing a causal connection between his grievances and defendants' actions.

Rhodes's factual narrative is not a "substitute for legal argument." *Nixon v. City & Cnty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015). And merely listing issues and authority, with no citation to the record and no analysis, is not "adequate briefing." *Garrett*, 425 F.3d at 841 (internal quotation marks omitted). Because Rhodes has failed to show any reversible error, we affirm the district court's judgment. *See Nixon*, 784 F.3d at 1366 (affirming dismissal of claim where appellant's brief failed to challenge the basis for the district court's ruling); *see also Reedy v. Werholtz*, 660 F.3d 1270, 1275 (10th Cir. 2011) (stating that we do not address a district court's reasoning when the appellant's opening brief does not challenge it).

## IV.    Conclusion

The judgment is affirmed. We take no action on Rhodes's notices to the court regarding events that allegedly occurred after entry of judgment.

Entered for the Court

Nancy L. Moritz
Circuit Judge